U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2010 AUG 16 PM 12: 52

CLERK
BY KAK
DEPUTY CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| KIRK BROWN,<br>Plaintiff,<br><br>v.<br><br>NATIONAL LIFE INSURANCE COMPANY,<br>Defendant. | CIVIL ACTION NO. 2:10-cv-201 |

**COMPLAINT FOR DECLARATORY RELIEF & DAMAGES**

Plaintiff, Kirk Brown ("Mr. Brown"), individually as beneficiary of a certain life insurance policy issued to Cynthia Brown ("Cynthia Brown"), alleges upon information and belief as follows:

**PRELIMINARY STATEMENT**

This is a Complaint for declaratory relief, seeking a declaration of rights under a certain universal life insurance policy issued by the defendant, National Life Insurance Company ("National"), to Cynthia Brown and for damages by Mr. Brown against National for losses incurred by reason of National's fraudulent acts and its unreasonable and bad faith breach of the terms of the above-mentioned policy.

On or about December 27, 1996, Mr. Brown, then a licensed agent for National, placed a universal life insurance policy for his sister, Cynthia Brown. The policy named Mr. Brown as first beneficiary and Christine Stebbins f/k/a Christine Brown ("Ms. Stebbins") as second beneficiary. In or around 2004, Cynthia Brown became ill, and was then unable to attend to her affairs. Mr. Brown, as the brother of the rapidly failing Cynthia Brown, and as the broker who sold the policy and as the beneficiary under the policy sought to continue the payments on his

sister's policies. Mr. Brown was well aware that his sister's poor and failing health prevented her from reviewing her mail and paying bills. Mr. Brown attempted to make a timely premium payment on behalf of his ailing sister to maintain the policy. However, National deliberately thwarted that effort by refusing to provide Mr. Brown with the specific premium amount information he sought. National did so even as it was advised of Cynthia Brown's rapidly deteriorating condition. National then terminated the policy for Cynthia Brown's failure to make the very premium payment which National very successfully frustrated. Cynthia Brown died very shortly thereafter, and National has, to date, refused to tender the policy.

## PARTIES

1. Mr. Brown is an individual who resides at 6 Weir Street, Hingham, Massachusetts 02043..

2. National is a Vermont company organized under the laws of the State of Vermont with its principal place of business at One National Life Drive, Montpelier, Vermont 05604.

## JURISDICTION & VENUE

3. This Court has jurisdiction over this matter pursuant to the provisions of 28 U.S.C. § 1332 in that Mr. Brown and National are citizens of different states and there is at least $75,000 in controversy, exclusive of interest and costs. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

4. Venue is proper in this district in that, pursuant to 28 U.S.C. §1391(a)(2), a substantial part of the events or omissions giving rise to Mr. Brown's claims occurred within Vermont and National is subject to personal jurisdiction in the District of Vermont.

5. This Court may issue declaratory judgments pursuant to the provisions of 28 U.S.C. §§ 2201 and 2202. It is appropriate for the Court to enter a declaratory judgment in this action because there is a present and actual controversy between Mr. Brown and National

concerning the respective rights and obligations of the parties with respect to National's obligations to pay policy benefits.

## FACTUAL ALLEGATIONS

### *Insurance Policy Allegations*

6. Pursuant to an application executed by Cynthia Brown on December 27, 1996, National issued to Cynthia Brown a Flexible Premium Adjustable Benefit Life Insurance policy bearing policy number NL2285635 with a face amount of $395,150.00, effective from February 19, 1997. A true and accurate copy of the National insurance policy No. NL2285635 is attached hereto as Exhibit A. Policy NL2285635 will be referred to hereinafter as the "Policy."

7. Between 1996 and July 31, 1999, Mr. Brown was a licensed National agent. Mr. Brown acted as soliciting agent at the time the Policy was issued by National to Cynthia Brown. Mr. Brown's license with National was terminated on July 31, 1999 given that he was no longer writing new business for National.

8. The Policy names Mr. Brown as the first beneficiary, and names Ms. Stebbins as the second beneficiary.

9. The Policy obligates National to pay the Death Benefit, as defined in the Policy, to the Beneficiary, subject to the terms of the Policy, upon receipt at National's Home Office that that the Insured died while the Policy was in force.

10. In or around April 1997, the initial Policy premium payment of $19, 078.25 was paid by Cynthia Brown to National from a surrender of a Sun Life of Canada insurance policy.

11. In accordance with the terms of the Policy, premium payments were due annually on the 19th of February.

12. In or around March 1998, Cynthia Brown requested that Policy premium payments be deducted from her banking account. Accordingly, monthly Policy premium payments were deducted from her banking account from March 1998 through February 2001.

13. In or around February 2001, National was notified by its Boston agency (Boston Agency No. 022) that Cynthia Brown requested that Policy premium payments no longer be deducted from her banking account; rather, she intended to let Policy values pay the cost of Policy payments as she was then on disability.

14. In or around January 2000, Cynthia Brown was issued a Policy Loan by National in the amount of $10,000.00, in accordance with the terms of the Policy.

15. In or around July 2000, Cynthia Brown was issued a second Policy Loan by National, also in the amount of $10,000.00, in accordance with the terms of the Policy.

16. In accordance with the terms of the Policy, unpaid loan interest for years 2001, 2002, 2003, 2004, 2005 and 2006 was added to the balance of the loan.

*Cynthia Brown's Deteriorating Health Condition*

17. In or around 2004, Cynthia Brown learned that she had contracted a serious and debilitating illness, breast cancer. For the years thereafter, Cynthia Brown would struggle with her health condition, but slowly decline. Eventually, her condition degraded such that she began to involve Mr. Brown, her brother and first beneficiary under the Policy, as well as Ms. Stebbins, her sister and second beneficiary under the Policy, in managing her affairs.

18. Cynthia Brown's deteriorating health condition was such that she no longer had the ability to care for herself or to handle her own affairs.

19. In or around 2004, as a result of her condition, Cynthia Brown moved from her home in Branford, Connecticut to live near Ms. Stebbins, her sister, in Canandaigua, New York.

20. Notice of Cynthia Brown's change of address was sent to National in or around 2004.

21. Mindful of Cynthia Brown's deteriorating health condition and her resulting limitations, and of the fact that he had acted as Cynthia Brown's agent in procuring the Policy for her, Mr. Brown became concerned as to the need to make premium payments in order to keep the Policy in effect. Mr. Brown would assist Cynthia Brown in determining this information, acting on her behalf in this aspect of her life.

***Efforts to Obtain Premium Amount & Allegations Related to Claims Against National***

22. Given her health condition, Cynthia Brown did not have the ability to gather premium statements and invoices related to the Policy, or to deal with National in determining the status of the Policy. Accordingly, Mr. Brown acted on her behalf to take the necessary steps to ensure the continued effectiveness of the Policy.

23. In this regard, Mr. Brown contacted National's customer service line on or about November 6, 2006 to inquire about the status of the Policy. Specifically, Mr. Brown requested information regarding the status of Policy premium payments, and whether a Policy premium payment(s) needed to be made in order to prevent the Policy from lapsing for non-payment of premiums.

24. During this telephone conversation, Mr. Brown informed National of Cynthia Brown's deteriorating health condition, that given Cynthia Brown's deteriorating health condition she was unable to communicate or to gather premium statements and invoices related to the Policy, that given Cynthia Brown's deteriorating health condition he was acting on her behalf as her representative, that he was the beneficiary under the Policy, and, in

particular, that he was the National agent who had placed the Policy with Cynthia Brown and, in particular, that Cynthia Brown may soon become deceased. Given Cynthia Brown's deteriorating health condition, Mr. Brown informed National that it was imperative that he determine whether a Policy premium payment(s) was required in order to prevent the Policy from lapsing for non-payment of premiums.

25. Importantly, Mr. Brown informed National that Cynthia Brown did not want the Policy to lapse for non-payment of premiums. Mr. Brown specifically stated, and restated, that given Cynthia Brown's condition, he was acting as her representative, and that he needed only the premium payment amount from National in order to make the Policy premium payment(s), to the extent any needed to be made.

26. Upon information and belief, National is in possession of a recording of the November 6, 2006 telephone conversation with Mr. Brown.

***Allegations Related to National's Improper Conduct and Termination of the Policy***

27. During the November 6, 2006 telephone conversation, National refused to provide Mr. Brown with information regarding Policy premium payments, or the ability to make any such payments.

28. Instead, the National customer service representative stated to Mr. Brown that because he was no longer a licensed National agent, the representative would not discuss the matter with him.

29. During this discussion, National's customer service representative made no effort to assist Mr. Brown in obtaining the Policy premium payment information he sought on behalf of Cynthia Brown, or to allow him to make Policy premium payments; rather, the customer service representative simply refused to discuss the matter with Mr. Brown,

and, inexplicably, directed him to confer with a National agent in National's Boston Agency, located in Hingham, Massachusetts, who, according to the customer service representative, would be able to provide Mr. Brown with the Policy premium payment information he sought if Mr. Brown would seek to reapply as a sales representative of the defendant. Brown, having been in the insurance industry for decades, was fully aware that every passing day brought risk of a lapse of the Policy through nonpayment of premiums given his sister's rapidly declining condition. He vigorously rejected the proposal as doing so could result in the loss of critical time in the form of delays and application procedures. In this discussion, the defendant provided no reason as to why this procedural step was necessary.

30. Immediately following the November 6, 2006 telephone conversation, at the direction of National's customer service representative, Mr. Brown contacted National's Boston agency. However, rather than provide Mr. Brown with the Policy information he sought, National's agent merely referred Mr. Brown to the office of a National affiliate insurance agency located in Hingham, Massachusetts – DMI Marketing, Inc. f/k/a Donahue-Macchia Insurance Agency, Inc. ("DMI"). Mr. Brown was informed that a DMI agent would be able to assist him in obtaining the Policy information he had been seeking.

31. With no meaningful options other than complying with the insurer's inflexible, risky and self-serving policies, several days following the above-referenced telephone conversation, in and around November 2006, at the direction of National's agent, Mr. Brown visited DMI's offices for the sole purpose of obtaining the Policy premium payment information he had first been denied by National's customer service representative, and then by National's agent in its Boston agency.

32. Mr. Brown met with DMI agent Keith Schettino ("Mr. Schettino") who informed him that rather than have Mr. Schettino obtain from National the Policy premium payment information Mr. Brown sought, it would be easier for Mr. Brown to apply with National to become reinstated as a licensed National agent and obtain the information himself.

33. Following his meeting with Mr. Schettino of DMI, at Mr. Schettino's direction, Mr. Brown began the process of reinstating his license with National, which risked a Policy lapse for nonpayment while Mr. Brown was in the throes of a reinstatement process. Mr. Brown did so for the sole purpose of finally obtaining the Policy premium payment information he had been denied by both National's customer service representative and by National's agent in its Boston agency.

34. Upon information and belief, Mr. Brown alleges that National's actions described above were done with the intent and for the purpose of delaying and/or preventing payment of the premium(s) in order that the Policy would lapse for non-payment.

35. On October 20, 2006, National purports to have sent Cynthia Brown a so-called "late remittance/pending lapse" notification letter, addressed to 11 Calman Place, Canandaigua, NY 14424-1671, notifying Cynthia Brown that "your contract does not have sufficient value to pay the cost presently due" and that unless payment in the amount of $1,442.87 was received by November 20, 2006, National "will not be able to continue providing the desired coverage."

36. On November 24, 2006, National purports to have sent Cynthia Brown a so-called "lapse notification letter," addressed to 11 Calman Place, Canandaigua, NY 14424-1671, notifying Cynthia Brown that as it had "not received the payment necessary to keep this

life insurance in force…it was necessary to process a policy lapse, and there is presently no coverage provided."

37. On December 3, 2006, Cynthia Brown died.

38. Mr. Brown was reinstated as a licensed National agent in December of 2006.

39. On December 19, 2006, National sent Mr. Brown a letter notifying him that the Policy had terminated without value on November 20, 2006, referencing its letter of November 24, 2006.

40. To date, National has refused to tender the Policy.

**COUNT I**
**(Declaratory Judgment)**

41. Mr. Brown reasserts and realleges the foregoing paragraphs 1 through 40 above as if fully set forth herein.

42. There is a present and actual controversy between Mr. Brown and National concerning the respective rights and obligations of the parties with respect to National's obligation to pay Policy benefits.

43. In order to determine the rights of the parties and to avoid undue prejudice, harm or unnecessary economic loss to the parties, the Court should enter a declaratory judgment defining the respective rights and obligations of the parties pursuant to the provisions of 28 U.S.C. §§ 2201 and 2202.

44. Based upon the allegations of fact set forth above and the documents attached hereto, National is obligated to pay the Death Benefit, as defined in the Policy, to the Beneficiary, in accordance with the terms of the Policy.

45. Accordingly, Mr. Brown seeks from this Court a determination determining the rights of all parties and declaring that National is obligated to pay the Death Benefit, as defined in the Policy, to the Beneficiary, in accordance with the terms of the Policy.

**COUNT II**
**(Fraud)**

46. Mr. Brown reasserts and realleges the foregoing paragraphs 1 through 45 above as if fully set forth herein.

47. From November 2006 through Cynthia Brown's death on December 3, 2006 and thereafter, National, by and through its agents, engaged, as set forth herein, in fraudulent activities to allow the Policy to lapse and terminate. National did so by making misrepresentations to Mr. Brown, in concealing facts from Mr. Brown, and generally engaging in a practice of acting to the benefit of National and National's agents, and to the detriment of Mr. Brown and Cynthia Brown. These actions all occurred from at least November 2006 to Cynthia Brown's death on December 3, 2006 and thereafter.

48. As set forth herein, National, by and through its agents, made false representations, concealments, and inducements to Mr. Brown, while he was acting on behalf of Cynthia Brown. Such false representations, concealments, and inducements were ongoing and continuous from at least November 2006 until Cynthia Brown's death on December 3, 2006 and thereafter.

49. National had a duty to make a disclosure of, among others, relevant Policy premium payment information to Cynthia Brown, and Mr. Brown acting on Cynthia Brown's behalf, which it knew or should have known had to be made.

50. National failed to disclose material information that Cynthia Brown, and Mr. Brown acting on Cynthia Brown's behalf, could have used to avoid harm to Cynthia Brown and to Mr. Brown.

51. National's failure to disclose such information was made recklessly or with the intent to deceive and defraud Cynthia Brown and Mr. Brown acting on Cynthia Brown's behalf, and with the intent to deceive and defraud Mr. Brown.

52. These concealments and misrepresentations were false, known to be false, or were recklessly made. In addition, the facts that were concealed were material facts, that is, they were either likely to change a reasonable person's mind or that, for some reason known to National by and through its agents, was likely to change a reasonable person's mind.

53. National intentionally, recklessly, and negligently engaged in the acts of fraud, and it intended that Mr. Brown and Cynthia Brown, and Mr. Brown acting on Cynthia Brown's behalf, would rely upon such acts. In addition, National, though its misrepresentations and concealment of facts from Mr. Brown, intended to mislead Mr. Brown and Cynthia Brown.

54. Mr. Brown and Cynthia Brown, and Mr. Brown acting on Cynthia Brown's behalf, relied upon the misrepresentations, concealments and actions by National and was thereby harmed by their reliance on National's misrepresentations of fact.

55. In addition, Mr. Brown (as beneficiary and third party beneficiary) reasonably relied on the above alleged fraudulent inducements, representations, and concealments, and was damaged as a result of such reliance. Mr. Brown had a reasonable expectation and belief

that he was the intended beneficiary of the Policy. Cynthia Brown and Mr. Brown were reasonably misled.

56. As a direct and proximate result of Mr. Brown's reliance, Cynthia Brown's reliance, and Mr. Brown's reliance while acting on Cynthia Brown's behalf, upon National's fraud and misrepresentation, Mr. Brown has incurred damages, costs and legal expenses, including attorneys' fees.

**COUNT III**
**(Negligent Misrepresentation)**

57. Mr. Brown reasserts and realleges the foregoing paragraphs 1 through 56 above as if fully set forth herein.

58. National made material false representations of fact as described above.

59. At the time that National made such statements, it knew or should have known that they would be relied upon by Mr. Brown and Cynthia Brown, and Mr. Brown acting on Cynthia Brown's behalf.

60. At the time that National made such statements, it knew or should have known that they were false, and/or National negligently disregarded whether these representations were true. National nevertheless made these negligent material misrepresentations with full knowledge and intention that they would be relied upon by Mr. Brown and Cynthia Brown, and Mr. Brown acting on Cynthia Brown's behalf.

61. At all relevant times, Mr. Brown and Cynthia Brown, and Mr. Brown acting on Cynthia Brown's behalf, justifiably relied on National's material misstatements.

62. In addition, Mr. Brown (as beneficiary and third party beneficiary) justifiably relied on National's material misstatements, and was damaged as a result of such reliance. Mr. Brown had a reasonable expectation and belief that he was the intended beneficiary of the Policy. Cynthia Brown and Mr. Brown were reasonably misled.

63. As a direct and proximate result of National's negligent misrepresentations, Mr. Brownhas incurred damages, costs and legal expenses, including attorneys' fees.

**COUNT IV**
**(Breach of Contract)**

64. Mr. Brown reasserts and realleges the foregoing paragraphs 1 through 63 above as if fully set forth herein.

65. In or about February 19, 1997, National entered into a life insurance policy agreement (the Policy) with Cynthia Brown, to wit, for the payment of certain benefits to the policy beneficiary upon Cynthia Brown's death, according to the terms of the Policy. Mr. Brown was the beneficiary and third party beneficiary of the Policy.

66. National has wrongfully refused and continues to wrongfully refuse to pay the benefits due under the Policy to Mr. Brown. National has breached the Policy by failing to pay benefits due under its terms.

67. Because of National's actions as set forth in the above and foregoing paragraphs, National has breached its duties of good faith and fair dealing with regard to the Policy and is further estopped from challenging the validity and enforceability of the Policy, and therefore must pay the death benefit due under the terms of the Policy.

68. In failing to pay the death benefit causing the need to file this action, National has forced Mr. Brown to incur damages, costs and legal expenses, including attorneys' fees.

**Count V**
**(Consumer Fraud - Violation of 9 V.S.A. § 2451 *et. seq.*)**

69. Mr. Brown reasserts and realleges the foregoing paragraphs 1 through 68 above as if fully set forth herein.

70. At all relevant times, Cynthia Brown was a "consumer" as that term is used in the Vermont Consumer Fraud Statute, 9 V.S.A. §2451, *et seq.* (the "Consumer Fraud Statute").

71. National is a "Seller" of "Goods," and/or "Services," as those terms are used in the Consumer Fraud Statute.

72. National's misrepresentations, intentional practices and/or omissions as described above were likely to mislead Mr. Brown and Cynthia Brown, and Mr. Brown acting on Cynthia Brown's behalf, and similarly situated consumers, and did mislead Mr. Brown and Cynthia Brown, and Mr. Brown acting on Cynthia Brown's behalf, as described above.

73. At all relevant times, Mr. Brown and Cynthia Brown, and Mr. Brown acting on Cynthia Brown's behalf, acted reasonably under the circumstances.

74. At all relevant times, Mr. Brown and Cynthia Brown, and Mr. Brown acting on Cynthia Brown's behalf, relied on National's representations with respect to the Policy as described above.

75. As a direct and proximate result of National's acts, Mr. Brown has incurred damages, costs and legal expenses, including attorneys' fees.

**COUNT VI**
**(Breach of the Covenant of Good Faith and Fair Dealing)**

76. Mr. Brown reasserts and realleges the foregoing paragraphs 1 through 75 above as if fully set forth herein.

77. A contract existed between Cynthia Brown and National by virtue of the Policy. Mr. Brown was the beneficiary and third party beneficiary of the Policy.

78. National was bound by a duty of good faith and fair dealing in the performance of its obligations under the Policy.

79. National has undertaken the wrongful actions set forth above, for its own personal, economic gain and to the detriment of Mr. Brown .

80. As a direct and proximate result of National's actions, Mr. Brown has incurred damages, costs and legal expenses, including attorneys' fees.

**COUNT VII**
**(Bad Faith)**

81. Mr. Brown reasserts and realleges the foregoing paragraphs 1 through 80 above as if fully set forth herein.

82. In its handling of the Policy and of the matters described above, National owed a fiduciary duty of trust and confidence that it act in the best interest of its insured, and not unduly favor its own interests, and further had a duty to act both reasonably and competently.

83. National had no reasonable basis to terminate the Policy and deny coverage, either knew or should have known and intentionally or recklessly disregarded the lack of reasonable basis to terminate the Policy and deny coverage, and thereby elevated its own interests over those of its insured.

84. As a direct and proximate result of National's actions, Mr. Brown has incurred damages, costs and legal expenses, including attorneys' fees.

**COUNT VIII**
**(Enhanced Damages)**

85. Mr. Brown reasserts and realleges the foregoing paragraphs 1 through 84 above as if fully set forth herein.

86. National's conduct was evasive, willful, malicious and/or manifested a reckless or wanton indifference toward and disregard of Cynthia Brown's and Mr. Brown's rights, meriting punishment through and award of punitive or exemplary damages.

**CLAIM FOR RELIEF**

WHEREFORE, Mr. Brown prays for judgment against National as follows:

A. That pursuant to Count I of Mr. Brown's Complaint, this Court enter judgment declaring that National is obligated to pay the Death Benefit, as defined in the Policy, to the Beneficiary, in accordance with the terms of the Policy, and that the Policy has been breached by National;

B. That pursuant to Counts II through VIII of Mr. Brown's Complaint, this Court enter judgment in Mr. Brown's favor in an amount equal to any and all damages National has caused Mr. Brown to incur, including any and all interest, costs and attorney's fees according to law;

C. That pursuant to Count V of Mr. Brown's Complaint, this Court enter judgment for statutory damages pursuant to the Vermont Consumer Fraud Statute;

D. That pursuant to Counts II through VIII of Mr. Brown's Complaint, this Court award punitive and exemplary damages in an amount sufficient to punish National and deter future conduct of this type; and

E. Such further relief as this Court may deem just and proper.

**JURY CLAIM**

Mr. Brown hereby demands a jury trial on all issues triable before a jury.

Respectfully submitted, this 13th day of August, 2010.

**KIRK BROWN,**
By his Attorney,

Ralph Suozzo VT#4405
**MORRISON MAHONEY LLP**
2 Wall Street, Suite 230
Manchester, NH 03101
(603) 622-3466
rsuozzo@morrsionmahoney.com