# EXHIBIT A

A Mutual Company Established 1850

# National Life Insurance Company

## Montpelier, Vermont 05604

(802) 229-3333

### National Life
#### of Vermont

National Life Insurance Company
Montpelier, VT 05604

---

We, NATIONAL LIFE INSURANCE COMPANY, agree to pay the Death Benefit to the Beneficiary, subject to the terms of this policy, when we receive at our Home Office due proof that the Insured died while this policy was in force.

The data and the terms on this and all following pages are part of this policy.

Signed for NATIONAL LIFE INSURANCE COMPANY at Montpelier, Vermont, as of the Date of Issue, by



NATIONAL LIFE
of VERMONT

KIRK BROWN

_Frederic H. Bertrand_
Chairman of the Board
and
Chief Executive Officer

_Margaret K. Arthur_
Secretary

_W. H. Slepancih_
Registrar

---

**Flexible Premium Adjustable Benefit Life Insurance.** Flexible premiums are payable through the end of the **Premium Payment Period or until the prior death of the Insured. The adjustable death benefit is payable upon the death of the Insured. This policy is participating.**

**Ten Day Right to Review Policy.** This policy, at any time within ten days after its receipt by the Owner, may be returned in person or by mail to us or to the agent through whom it was bought. Upon such return, the policy will be deemed void as of its Date of Issue. We will then refund any premium paid.

UBB022                          DATA SECTION


POLICY NUMBER:  NL2285635             DATE OF ISSUE:  FEB. 19, 1997

      INSURED:  CYNTHIA BROWN

    ISSUE AGE:  46                      FACE AMOUNT:     $395150

         OWNER: AS STATED IN THE APPLICATION UNLESS LATER CHANGED

   BENEFICIARY: AS STATED IN THE APPLICATION UNLESS LATER CHANGED


                 DEATH BENEFIT OPTION: B

                 MONTHLY POLICY DATE: 19TH


      MINIMUM MONTHLY PREMIUM:        $363.85


      PLANNED PERIODIC PREMIUM:     $19078.25 PAYABLE ANNUALLY
   FOR PREMIUM PAYMENT PERIOD:  FEB. 19, 1997 TO FEB. 19, 2050

THIS POLICY MAY TERMINATE PRIOR TO THE END OF THE PREMIUM PAYMENT PERIOD
IF PREMIUMS PAID ARE INSUFFICIENT TO CONTINUE COVERAGE TO THAT DATE.


          MINIMUM COVERAGE AMOUNT:       $25000.00
          MINIMUM WITHDRAWAL AMOUNT:       $500.00

THE LOAN INTEREST RATE IS VARIABLE.  THE LOAN INTEREST RATE AT THE DATE OF
ISSUE IS  7.40%.


NVTK        NL2285635            DATA SECTION
                                COVER PAGE

DATA SECTION

GUARANTEED BASIS OF CALCULATIONS

FACE AMOUNT:     $395150
EFFECTIVE DATE:  FEB. 19, 1997

ACCUMULATED VALUE INTEREST RATE:  0.32738% COMPOUNDED MONTHLY, WHICH IS
EQUIVALENT TO  4.000% COMPOUNDED PER YEAR

MORTALITY TABLE:   COMMISSIONERS 1980 STANDARD ORDINARY, FEMALE NON-SMOKER
AGE NEAREST BIRTHDAY

THE INSURED HAS BEEN CLASSIFIED A PREFERRED NON-SMOKER.

TABLE OF GUARANTEED MAXIMUM COST OF INSURANCE RATES
(PER $1,000 PER MONTH)

| ATTAINED AGE | RATE | ATTAINED AGE | RATE | ATTAINED AGE | RATE |
|---|---|---|---|---|---|
| 46 | .26590 | 71 | 1.94879 | 96 | 32.32378 |
| 47 | .28425 | 72 | 2.17053 | 97 | 41.21204 |
| 48 | .30426 | 73 | 2.44094 | 98 | 57.81394 |
| 49 | .32511 | 74 | 2.75926 | OVER 98 | 57.81394 |
| 50 | .34929 | 75 | 3.11970 | | |
| 51 | .37514 | 76 | 3.51565 | | |
| 52 | .40433 | 77 | 3.94131 | | |
| 53 | .43853 | 78 | 4.39675 | | |
| 54 | .47356 | 79 | 4.89467 | | |
| 55 | .51109 | 80 | 5.45628 | | |
| 56 | .54947 | 81 | 6.10032 | | |
| 57 | .58785 | 82 | 6.84571 | | |
| 58 | .62456 | 83 | 7.70559 | | |
| 59 | .66377 | 84 | 8.66019 | | |
| 60 | .70967 | 85 | 9.70835 | | |
| 61 | .76392 | 86 | 10.83105 | | |
| 62 | .83236 | 87 | 12.03563 | | |
| 63 | .91834 | 88 | 13.30897 | | |
| 64 | 1.02021 | 89 | 14.67130 | | |
| 65 | 1.13044 | 90 | 16.12162 | | |
| 66 | 1.24906 | 91 | 17.68913 | | |
| 67 | 1.36937 | 92 | 19.41995 | | |
| 68 | 1.49055 | 93 | 21.39829 | | |
| 69 | 1.62012 | 94 | 23.83051 | | |
| 70 | 1.76979 | 95 | 27.16158 | | |

DATA SECTION
FIRST OF TWO PAGES

DATA SECTION

FACE AMOUNT:        $395150
EFFECTIVE DATE:  FEB. 19, 1997


PERCENT OF PREMIUM EXPENSE CHARGE:  6.00000% OF PREMIUM
PREMIUM PAYMENT PROCESSING FEE:  $1.00 PER PREMIUM PAYMENT

TOTAL MONTHLY ADMINISTRATIVE CHARGES ASSESSED ON A PER THOUSAND BASIS*:

THROUGH FEB. 19, 2002:  $67.17

MONTHLY ADMINISTRATIVE CHARGES PER POLICY*:    $4.00

### SURRENDER CHARGES

| TWELVE MONTH PERIOD BEGINNING | BEGINNING OF PERIOD SURRENDER CHARGE |
|---|---|
| FEB. 19, 1997 | $4366.41 |
| FEB. 19, 1998 | $3963.35 |
| FEB. 19, 1999 | $3560.30 |
| FEB. 19, 2000 | $3157.25 |
| FEB. 19, 2001 | $2754.19 |
| FEB. 19, 2002 | $2351.14 |
| FEB. 19, 2003 | $1880.91 |
| FEB. 19, 2004 | $1410.68 |
| FEB. 19, 2005 | $940.45 |
| FEB. 19, 2006 | $470.22 |
| FEB. 19, 2007 AND LATER | 0.00 |


THE SURRENDER CHARGES SHOWN ABOVE ARE FOR THE BEGINNING OF EACH STATED
TWELVE MONTH PERIOD.   SURRENDER CHARGES DECREASE MONTHLY BETWEEN THE
VALUES SHOWN ABOVE ON EACH MONTHLY POLICY DATE.   EACH MONTHLY DECREASE
EQUALS ONE-TWELFTH OF THE DIFFERENCE BETWEEN THE SURRENDER CHARGE AT THE
BEGINNING OF THE THEN CURRENT PERIOD AND THE SURRENDER CHARGE AT THE
BEGINNING OF THE NEXT PERIOD.

* MONTHLY ADMINISTRATIVE CHARGES ARE APPLICABLE ONLY UNTIL THE INSURED'S
  ATTAINED AGE 99.

DATA SECTION
SECOND OF TWO PAGES

# INDEX

| Page | | Page | |
|---|---|---|---|
| 1 | **GENERAL TERMS OF THIS POLICY** | 5 | **BENEFICIARY** |
| 1 | Consideration | 5 | General Beneficiary Terms |
| 1 | Entire Contract | 5 | Trust Beneficiary |
| 1 | Policy Effective Dates | 5 | Change of Beneficiary |
| 1 | Policy Months, Years and Anniversaries | 5 | **POLICY VALUES** |
| 1 | Payment of Benefits | 5 | Accumulated Value |
| 1 | Notices | 6 | Interest Rates Credited to the Accumulated Value |
| 1 | Misstatement of Age or Sex | 6 | Monthly Deduction |
| 1 | Attained Age | 6 | Cost of Insurance |
| 1 | Basis of Values | 6 | Cash Surrender |
| 1 | **REPRESENTATIONS AND INCONTESTABILITY** | 7 | **WITHDRAWALS** |
| 1 | Representations | 7 | Withdrawals |
| 1 | Incontestability | 7 | **POLICY LOANS** |
| 2 | **PREMIUMS** | 7 | Policy Loans |
| 2 | Policy Protection Period | 7 | Loan Value |
| 2 | Payment of Premiums | 7 | Loan Interest Rate |
| 2 | Grace Period | 8 | General Loan Terms |
| 2 | Continuation of Insurance | 8 | **DIVIDENDS** |
| 3 | Reinstatement | 8 | Dividends |
| 3 | **DEATH BENEFIT AND POLICY CHANGES** | 8 | **REPORTS** |
| 3 | Death Benefit Options | 8 | Annual Report |
| 3 | Option A | 8 | Projection Report |
| 3 | Option B | 8 | **PAYMENT OPTIONS** |
| 3 | Death Benefit Standard | 8 | General Payment Option Terms |
| 4 | Changes in Face Amount and Death Benefit Option | 8 | Choice of Option |
| 4 | Face Amount Increases | 8 | Change of Payment Option |
| 4 | Face Amount Decreases | 8 | Withdrawals |
| 4 | Death Benefit Option Changes | 9 | Payment Options |
| 4 | Death Benefit | 9 | Option 1 - Payments of Interest Only |
| 4 | Suicide Limitation | 9 | Option 2 - Payments for a Stated Time |
| 5 | **POLICY OWNERSHIP** | 9 | Option 3 - Payments for Life |
| 5 | General Ownership Terms | 10 | Option 4 - Payments of a Stated Amount |
| 5 | Assignments | 10 | Option 5 - Life Annuity |
| 5 | Spendthrift Provision | 10 | Option 6 - Joint and Two-Thirds Annuity |
| | | 10 | Option 7 - 50% Survivor Annuity |

Any Riders and Endorsements, and a copy of the application, follow page 10.

National Life Insurance Company
One National Life Drive, Montpelier, Vermont 05604, Tel. (802) 229-3333

6557MA(0493)I

# GENERAL TERMS OF
# THIS POLICY

**Consideration.** This policy is issued in consideration of the application and payment of the first Minimum Monthly Premium as shown in the Data Section. We will incur no liability if no premium is paid.

**Entire Contract.** On the Date of Issue the entire contract between the parties is this policy and a copy of the application which is attached at issue. Any change of this contract must be written and may be made only by one of our authorized officers or registrars. We will send the Owner a copy of any application for a change which we approve. It and any additional Data Section shall become part of this contract on the effective date of such change.

**Policy Effective Dates.** The Face Amount on the Date of Issue shall become effective on the Date of Issue shown in the Data Section.

Any increase in Face Amount for which an application is required shall become effective on the Monthly Policy Date on or next following the date we approve the application for such increase in Face Amount.

Any increase in Face Amount for which an application is not required shall become effective on the Monthly Policy Date on or next following the date we receive the request for such increase unless otherwise provided by the policy.

Any decrease in Face Amount requested shall become effective on the Monthly Policy Date on or next following the date we receive the request for such decrease.

Any reinstatement of this policy shall become effective on the Monthly Policy Date on or next following the date we approve the application for Reinstatement.

Any change of Death Benefit Option shall become effective on the Monthly Policy Date on or next following the date we receive the request for such change.

**Policy Months, Years and Anniversaries.** Policy months, years and anniversaries shall be measured from the Date of Issue. The Monthly Policy Date shown in the Data Section occurs on the same day each month or on the last day of any month having no such date. The Date of Issue is the first Monthly Policy Date.

**Payment of Benefits.** We will pay all benefits under this policy at our Home Office. Before payment of any Death Benefit we may investigate the death.

**Notices.** Unless this policy provides otherwise, any requests for changes or notices:

1. from us to the Owner shall be sent to the last address known to us of the Owner; and

2. from us to an assignee shall be sent to the last address known to us of such assignee; and

3. from the Owner or an assignee to us must be in writing and received by us at our Home Office in Montpelier, Vermont.

**Misstatement of Age or Sex.** The Issue Age shown in the Data Section is the age of the Insured on the Insured's birthday nearest to the Date of Issue. It is based on the date of birth shown in the application. If the age or sex of the Insured has been misstated, we will adjust the Accumulated Value to be the amount it would have been had all Monthly Deductions been based on the correct age and sex of the Insured. The adjustment shall take effect on the Monthly Policy Date on or next following the date when we have proof to our satisfaction of such misstatement. If the Insured has died, we will adjust the Accumulated Value as of the last Monthly Policy Date prior to the Insured's death; however, if the Accumulated Value is insufficient, we will adjust the Death Benefit.

**Attained Age.** The Attained Age of the Insured on any date is the Issue Age shown in the Data Section plus the number of policy years and months which have passed since the Date of Issue.

**Basis of Values.** The guaranteed values for this policy are equal to or greater than those required by the law of the state where this policy is delivered. The guaranteed values are based on the Accumulated Value Interest Rate and Mortality Table shown in the Data Section. A detailed statement of the method of computing values has been filed in the state in which this policy is delivered.

# REPRESENTATIONS
# AND INCONTESTABILITY

**Representations.** Any statement made by or for the Insured shall be deemed a representation and not a warranty. Unless such statement is in the attached application or in any subsequent application, it shall not be used to:

1. make this policy void; or

2. make any increase in Face Amount void; or

3. make any Reinstatement void; or

4. defend any claim.

**Incontestability.** After this policy has been in force during the life of the Insured for two years from the policy Date of Issue, we will not contest it; however,

1. we may contest any increase in Face Amount for which an application is required until such increase has been in force during the life of the Insured for two years from its Effective Date; and

2. we may contest any Reinstatement until such Reinstatement has been in force during the life of the Insured for two years from its Effective Date.

# PREMIUMS

**Policy Protection Period.** The first 60 policy months following the Date of Issue or any subsequent redetermination of the Minimum Monthly Premium made upon an increase in Face Amount is referred to as a Policy Protection Period. A new Policy Protection Period will begin whenever the Minimum Monthly Premium is redetermined upon an increase in Face Amount.

**Payment of Premiums.** A premium equal to the Minimum Monthly Premium stated in the Data Section is due on the Date of Issue.

During any Policy Protection Period payment of total accumulated premiums, in excess of withdrawals and loans, at least equal to the Minimum Monthly Premium times the number of Monthly Policy Dates that have passed since its determination will keep the policy in force to the next Monthly Policy Date. Otherwise, this policy will remain in force as long as the Cash Surrender Value is sufficient to provide for Monthly Deductions.

The Planned Periodic Premiums are the premiums the Applicant has chosen to pay. Planned Periodic Premiums may be annual, semi-annual, quarterly, or monthly. The Owner may change the amount or Premium Payment Period of Planned Periodic Premiums at any time by sending a written notice to us at our Home Office. However, we may limit any increase in either amount or frequency.

In addition, we will accept Unscheduled Premiums, which are premiums in addition to the first, Minimum Monthly, or Planned Periodic Premiums. We may limit the number and amount of such premiums.

All premiums are limited by a minimum and a maximum. The minimum is $25 per premium. The maximum is the limit imposed by the Internal Revenue Code for qualifying the policy as "Life Insurance" for Federal Income Tax purposes, or such lower amount as we may set. We will not accept any premium in excess of the maximum. We will return any premiums not accepted and any interest credited to such premiums to the Owner within 60 days after the end of the Policy Year.

The first premium may be paid to us either through our duly authorized agent in exchange for a receipt signed by that agent or at our Home Office. All later premiums must be paid to us at our Home Office.

**Grace Period.** If both of the following occur on any Monthly Policy Date during a Policy Protection Period, a Grace Period shall start:

1. the amount of Cash Surrender Value is smaller than the amount of the Monthly Deduction on that date; and

2. the sum of the Minimum Monthly Premiums in effect on this policy over all months since the Date of Issue is greater than a sum equal to:

a. all premiums paid; less

b. all withdrawals made; less

c. any debt to us on this policy.

If on any Monthly Policy Date on or after the end of the most recently completed Policy Protection Period the Cash Surrender Value is smaller than the Monthly Deduction on such date, a Grace Period shall start.

A Grace Period shall be 61 days. During a Grace Period this policy shall remain in force.

The premium needed to keep the policy in force beyond a Grace Period which ends during a Policy Protection Period shall equal:

a. the sum of the Minimum Monthly Premiums in effect on this policy over all months from the Date of Issue to the start of the Grace Period; plus

b. two times the Minimum Monthly Premium shown in the Data Section; plus

c. all withdrawals; plus

d. any debt to us on this policy; less

e. all premiums paid.

The premium needed to keep the policy in force beyond a Grace Period which ends on or after the end of the most recently completed Policy Protection Period shall be the premium which after the deduction of the Percent of Premium Expense Charge and the Premium Payment Processing Fee will be sufficient to produce a Cash Surrender Value equal to three times the Monthly Deduction due on the date the Grace Period began.

We will mail notice of the premium needed to the Owner. If such premium needed is unpaid on the later of:

1. the last day of the Grace Period; or

2. the 31st day after such notice is sent;

then this policy shall terminate without value and it shall be null and void and all rights shall cease.

**Continuation of Insurance.** A Grace Period will not begin solely because payments of Planned Periodic Premiums are discontinued. Whether or not premiums are paid, Monthly Deductions will be made from the Accumulated Value and the policy will continue in force unless and until a Grace Period starts as provided in the Grace Period provision. The Accumulated Value will be determined as set forth under the Accumulated Value provision in the Policy Values section of this policy, except no interest will be credited during a Grace Period. The terms of this Grace Period provision will determine if and when a Grace Period starts.

**Reinstatement.** If this policy terminates after the end of a Grace Period, it may be reinstated. It must be reinstated on a Monthly Policy Date within five years from the start of such Grace Period and prior to the last day of the Premium Payment period.

For Reinstatement we will require:

1. an application for Reinstatement; and

2. proof to our satisfaction that the Insured is insurable; and

3. payment of an amount determined as follows:

   a. If Reinstatement occurs during a Policy Protection Period, the required payment shall be an amount equal to:

      i. the sum of the Minimum Monthly Premiums in effect on this policy over all months from the Date of Issue to the date of Reinstatement; plus

      ii. all withdrawals made; plus

      iii. any debt to us on this policy; less

      iv. all premiums paid.

   b. If Reinstatement occurs on or after the end of the most recently completed Policy Protection Period, the required payment shall be a premium which after the deduction of the Percent of Premium Expense Charge and the Premium Payment Processing Fee will make the Cash Surrender Value sufficient to provide:

      i. two times the Monthly Deduction due on the date the Grace Period began; plus

      ii. three times the Monthly Deduction due on the date of Reinstatement.

We will send the Owner notice of the required payment upon request.

In the event of Reinstatement:

1. the Surrender Charge in effect on the Monthly Policy Date on which the Grace Period began shall become the Surrender Charge on the Monthly Policy Date of Reinstatement; and

2. the schedule of Surrender Charges for the policy months following the date the Grace Period began shall become the schedule of Surrender Charges for the policy months following the date of Reinstatement; and

3. the Monthly Administrative Charge per Thousand in effect on the Monthly Policy Date on which the Grace Period began shall become the Monthly Administrative Charge per Thousand on the Monthly Policy Date of Reinstatement; and

4. the schedule of Monthly Administrative Charges per Thousand for the policy months following the date the Grace Period began shall become the schedule of Monthly Administrative Charges per Thousand for the policy months following the date of Reinstatement.

# DEATH BENEFIT AND POLICY CHANGES

**Death Benefit Options.** The Owner may elect either of two Death Benefit Options, Option A or Option B, for the period prior to the Insured's Attained Age 99. The Death Benefit Option is stated in the Data Section.

**Option A.** Under Option A the Death Benefit shall be the greater of the following or the Death Benefit Standard:

1. the Face Amount on the date of the Insured's death; less

2. the amount of any Monthly Deductions then due; less

3. any debt to us on this policy.

**Option B.** Under Option B the Death Benefit shall be the greater of the following or the Death Benefit Standard:

1. the Face Amount on the date of the Insured's death; plus

2. the Accumulated Value of the policy on the date of the Insured's death; less

3. the amount of any Monthly Deductions then due; less

4. any debt to us on this policy.

**Death Benefit Standard.** The Death Benefit Standard is established in conformance with Section 7702 of the Internal Revenue Code, which defines "Life Insurance" for Federal Income Tax purposes. The Death Benefit Standard is:

1. the Death Benefit Factor multiplied by the Accumulated Value of the policy on the date of the Insured's death; less

2. the amount of any Monthly Deductions then due; less

3. any debt to us on this policy.

The Death Benefit Factor depends on the Insured's Attained Age at the start of a Policy Year as follows:

| Attained Age | Death Benefit Factor | Attained Age | Death Benefit Factor |
|---|---|---|---|
| 40 | 2.50 | 58 | 1.38 |
| 41 | 2.43 | 59 | 1.34 |
| 42 | 2.36 | 60 | 1.30 |
| 43 | 2.29 | 61 | 1.28 |
| 44 | 2.22 | 62 | 1.26 |
| 45 | 2.15 | 63 | 1.24 |
| 46 | 2.09 | 64 | 1.22 |
| 47 | 2.03 | 65 | 1.20 |
| 48 | 1.97 | 66 | 1.19 |
| 49 | 1.91 | 67 | 1.18 |
| 50 | 1.85 | 68 | 1.17 |
| 51 | 1.78 | 69 | 1.16 |
| 52 | 1.71 | 70 | 1.15 |
| 53 | 1.64 | 71 | 1.13 |
| 54 | 1.57 | 72 | 1.11 |
| 55 | 1.50 | 73 | 1.09 |
| 56 | 1.46 | 74 | 1.07 |
| 57 | 1.42 | 75 | 1.05 |

The Death Benefit Factor for all Attained Ages below 40 is 2.50. The Death Benefit Factor for all Attained Ages above 75 is 1.05.

**Changes in Face Amount and Death Benefit Option.** The Owner may request any of the following changes. We will make a change subject to the conditions stated. These changes may be made only while the Insured is living and after the first policy anniversary. We will send the Owner a revised or additional Data Section if any of these changes is made.

1. **Face Amount Increases.** We will require an application from the Owner and proof to our satisfaction that the Insured is then insurable. An increase in Face Amount, and an associated redetermination of the Minimum Monthly Premium, shall be effective upon the Monthly Policy Date on or next following our approval.

2. **Face Amount Decreases.** We will require a written request from the Owner. A decrease in Face Amount shall be effective upon the Monthly Policy Date on or next following our receipt of the request.

    a. Decreases shall not be permitted which would reduce the sum of the Face Amount plus the Sums Insured of any Riders for Additional Protection Benefit attached to this policy to less than any of the following:

        i. the minimum insurance amount for which the policy would qualify as "Life Insurance" for Federal Income Tax purposes under the Internal Revenue Code; or

        ii. the Minimum Coverage Amount shown in the Data Section; or

        iii. 75% of the largest sum of the Face Amount plus the Sums Insured of any Riders for Additional Protection Benefit attached to this policy in force at any time in the twelve policy months prior to our receipt of the request.

    b. A decrease in total insurance coverage shall apply in the following order:

        i. first, to any increases in Face Amount or to the addition of any Rider for Additional Protection Benefit providing coverage on the life of the Insured, in the reverse order in which they were made;

        ii. second, to the Face Amount on the Date of Issue.

    If both an increase in Face Amount and the addition of a Rider for Additional Protection Benefit providing coverage on the life of the Insured became effective on the same date, a decrease in total insurance coverage made effective on that date shall apply in the following order:

        i. first, to any increase in total insurance coverage resulting from the addition of a Rider for Additional Protection Benefit providing coverage on the life of the Insured;

        ii. second, to any increase in Face Amount;

        iii. third, to the Face Amount on the Date of Issue.

3. **Death Benefit Option Changes.** The Death Benefit Option may be changed once each policy year prior to the Insured's Attained Age 99. We will require a written request from the Owner. A change will be effective on any Monthly Policy Date requested. The change may be made only if after such change the policy would qualify as "Life Insurance" for Federal Income Tax purposes under the Internal Revenue Code.

    a. Upon a change from Option A to Option B, the Face Amount shall decrease by an amount equal to the Accumulated Value of the policy just prior to the Effective Date of the change. However, the change may be made only if after such change the Face Amount would not be below the Minimum Face Amount shown in the Data Section.

    b. Upon a change from Option B to Option A, the Face Amount shall increase by an amount equal to the Accumulated Value just prior to the Effective Date of the change. No additional Surrender Charges shall be imposed solely because of this change.

At the Insured's Attained Age 99, if this policy is still inforce, the Face Amount of this policy will be set equal to the Accumulated Value, and the Death Benefit Option will automatically revert to Option A. The Death Benefit Option may not thereafter be changed.

**Death Benefit.** We will pay the Death Benefit to the Beneficiary when we receive at our Home Office due proof that the Insured died while this policy was in force. We will pay the Death Benefit in one sum unless a Payment Option is chosen. If the Death Benefit is paid in one sum, it shall be increased by interest from the date of the Insured's death to the date of payment. We will set the rate of interest at not less than the Accumulated Value Interest Rate shown in the Data Section.

**Suicide Limitation.** If the Insured dies within two years of the Date of Issue as the result of suicide, while sane or insane, we will pay only a sum equal to:

1. the premiums paid; less

2. any debt to us on this policy; less

3. any withdrawals made.

Payment will be made to the Beneficiary.

A similar two year period shall apply to any increase in Face Amount for which an application is required. Such period shall begin on the Effective Date of any such increase. During such period if the Insured dies as the result of suicide, while sane or insane, we will pay, in lieu of any such increase in Face Amount, only a sum equal to the Cost of Insurance that we have deducted from the Accumulated Value for such increase. However, if such increase became effective within two years after the Effective Date of a Reinstatement, we will pay only the amount set forth in the next paragraph.

If this policy is reinstated, a similar two year period shall start from the Effective Date of the Reinstatement. During such period, if the Insured dies as the result of suicide, while sane or insane, we will pay only a sum equal to:

1. the premiums paid since the Effective Date of the Reinstatement; less

2. any debt to us on this policy; less

3. any withdrawals made since the Effective Date of the Reinstatement.

## POLICY OWNERSHIP

**General Ownership Terms.** The Owner may:

1. exercise the rights under this policy; and

2. assign the policy; and

3. release or discharge the policy; and

4. change the policy if we agree to such change; and

5. enjoy the benefits under this policy.

These actions may be taken without the consent and against the interest of any Beneficiary and any contingent owner. If the Owner cannot change the Beneficiary, these actions may be taken only by the Owner and the Beneficiary jointly. These actions may be taken only while the Insured is alive.

**Assignments.** We are not responsible for the validity or effect of any assignment of this policy. We will not recognize any assignment until it has been filed at our Home Office. The interest of any Beneficiary whom the assignor can change and of any contingent owner shall be transferred to the assignee by the terms of any assignment. If the assignee acquires a right to proceeds, they shall be paid in one sum even though a Payment Option may be in effect at the time the assignment was signed.

**Spendthrift Provision.** If we receive at our Home Office written request by the Owner for this Spendthrift Provision, then, to the extent allowed by law:

1. only the Owner may transfer, anticipate, commute, or encumber the proceeds of this policy; and

2. only legal process against the Owner may affect the proceeds of this policy.

Any proceeds payable after this request is withdrawn by the Owner shall not be affected by this provision.

## BENEFICIARY

**General Beneficiary Terms.** The Owner has the right to change the Beneficiary. If the Owner expressly waives this right, no change can be made. Unless later changed, the Beneficiary shall be as stated in the application. The interest of any Beneficiary who dies before the Insured shall vest in the Owner unless otherwise stated.

If used, the term "children" of any person shall include only lawful children born to or legally adopted by that person.

We may rely on an affidavit by any person who in our judgment knows the facts to identify any Beneficiary or payee not specified by name. All our liability shall cease when we pay on the basis of such affidavit.

**Trust Beneficiary.** Unless an authorized officer or registrar of the Company explicitly agrees in writing, the following provision shall apply when a trust is named as Beneficiary.

In no event is the Company responsible for the application or disposition of any proceeds it pays to a Trust Beneficiary. Payment to a Trust Beneficiary is a full discharge of the liability of the Company. If a designated trust provides for successor trustees, the designation in this policy includes successor trustees. Likewise, if the trust allows amendments, the trust, if so amended, remains as a designated Beneficiary.

A Trust Beneficiary is considered to be a Beneficiary who did not survive the Insured if:

1. the trust has been terminated; or

2. the specified testamentary trust does not qualify as such; or

3. for any other reason a Trust Beneficiary is not entitled to any proceeds.

**Change of Beneficiary.** If the Owner has the right, a new Beneficiary may be named from time to time during the life of the Insured by filing at our Home Office written notice in such form as we may require. When notice is received at our Home Office, the change shall take effect on the date the notice is signed whether or not the Insured is living at the time of receipt. We will not be liable for any payment we make before receipt of the written notice at our Home Office.

## POLICY VALUES

**Accumulated Value.** The Accumulated Value on the Date of Issue is equal to the net premium paid less the Monthly Deduction for the first policy month.

On any Monthly Policy Date after the first Monthly Policy Date, the Accumulated Value shall be equal to:

1. the Accumulated Value on the just prior Monthly Policy Date; plus

2. one month's interest on the Accumulated Value on the just prior Monthly Policy Date; plus

3. the amount of all net premiums received since the just prior Monthly Policy Date; plus

4. interest on net premiums received since the just prior Monthly Policy Date from the date of receipt to the Monthly Policy Date; less

5. any withdrawals on the Monthly Policy Date; less

6. the Monthly Deduction for the month next following the Monthly Policy Date.

On any other day the Accumulated Value shall be equal to:

1. the Accumulated Value on the just prior Monthly Policy Date; plus

2. interest on the Accumulated Value on the just prior Monthly Policy Date from the just prior Monthly Policy Date to such day; plus

3. the amount of all net premiums received since the just prior Monthly Policy Date; plus

4. interest on net premiums received since the just prior Monthly Policy Date from the date of receipt to such day.

A net premium is the amount determined by first multiplying any premium paid by 1 minus the Percent of Premium Expense Charge shown in the Data Section and then reducing that result by the Premium Payment Processing Fee.

If this policy is reinstated, the Accumulated Value on the date of Reinstatement shall be:

1. the Accumulated Value on the date the Grace Period began; less

2. two times the Monthly Deduction due on the date the Grace Period began; plus

3. the net premium paid to reinstate the policy.

**Interest Rates Credited to the Accumulated Value.** The rate of interest credited on any portion of the Accumulated Value shall never be less than the Accumulated Value Interest Rate shown in the Data Section. We may credit interest at a higher interest rate.

Interest at different rates may be credited to:

1. that portion which is equal to any unpaid loan and unpaid loan interest on this policy; and

2. any portion in excess of any such unpaid loan and unpaid loan interest.

After this policy has been in force for a full ten years, any then current interest rates greater than or equal to 5.0% otherwise credited on that portion of the Accumulated Value in excess of any unpaid loan and unpaid loan interest on this policy will be increased by 0.5%.

**Monthly Deduction.**  A Monthly Deduction shall be the Cost of Insurance, plus the Monthly Administrative Charge per Thousand shown in the Data Section, plus the Monthly Administrative Charge per Policy, plus the monthly cost of any additional benefit riders in force on this policy.

**Cost of Insurance.** The Cost of Insurance rate on any day shall be based on the size and duration of this policy, the Insured's sex and then Attained Age, the rate class of the Face Amount on the Date of Issue, and the rate class of each increase in Face Amount.

On any Monthly Policy Date, the Cost of Insurance shall be:

1. the Cost of Insurance rate on such date divided by $1,000; multiplied by

2. the excess of:

    a. the Death Benefit plus any debt to us on such date, divided by the sum 1 plus the monthly Accumulated Value Interest Rate shown in the Data Section; over

    b. the Accumulated Value of this policy on such date.

We may change the Cost of Insurance rates from time to time based on our expectations of future experience. Any change in the Cost of Insurance rates shall apply to all policies of the same size and duration, insuring persons of the same sex, Attained Age, and rate class as the Insured. The Cost of Insurance rates shall not be greater than the rates set forth in the Table of Guaranteed Maximum Cost of Insurance Rates shown in the Data Section. These rates are based on the Mortality Table named in the Data Section.

The rate class of the Insured at the time of an increase in Face Amount for which an application is required may differ from the rate class on the Date of Issue. For determining the Cost of Insurance, if the Accumulated Value is part of the Face Amount:

1. the Accumulated Value is first considered part of the Face Amount on the Date of Issue; and

2. then, if the Accumulated Value is more than the Face Amount on the Date of Issue, the excess is considered part of the increases in Face Amount in the order of occurrence of such increases.

**Cash Surrender.** The Owner may, by written request to us, surrender this policy while the Insured is living for its Cash Surrender Value. We may require that the policy be returned to us. We may defer payment of any Cash Surrender Value for not more than six months. If we defer such payment for more than 30 days, we will pay interest at a rate not less than the Accumulated Value Interest Rate shown in the Data Section, from the date we receive such request and the policy, if required, to the date of payment. When this policy has been surrendered, it shall be null and void and all rights shall cease.

The Cash Surrender Value on any day to and including the last day of the Premium Payment Period shall be equal to:

1. the Accumulated Value on such day; less

2. any debt to us on this policy; less

6557(0493)6                                    -6-

3. any Surrender Charge which applies on such day.

The Surrender Charges are shown in the Data Section. Additional Surrender Charges shall apply to any increases in Face Amount except those resulting solely from a Death Benefit Option change. We will send to the Owner notice of the amounts and durations of Surrender Charges that apply to any such increases.

# WITHDRAWALS

**Withdrawals.** After the first policy anniversary and prior to the last day of the Premium Payment Period, the Owner may make withdrawals by written request to us. Withdrawals shall be subject to all of the following terms.

1. Withdrawals may be made only on a Monthly Policy Date which follows receipt of such request.

2. The amount withdrawn may not be less than the Minimum Withdrawal Amount stated in the Data Section.

3. The amount withdrawn may not exceed the Cash Surrender Value on the Monthly Policy Date less three times the Monthly Deduction for such Monthly Policy Date.

If Death Benefit Option A is in effect on the date of the withdrawal:

1. the Accumulated Value shall be decreased by the amount withdrawn; and

2. if the Face Amount divided by the Death Benefit Factor at the Insured's Attained Age on the date of the withdrawal exceeds the Accumulated Value of the policy just after the withdrawal, the Face Amount shall also be decreased. The decrease in Face Amount shall equal the lesser of such excess or the amount of the withdrawal.

A decrease in total insurance coverage shall apply in the following order:

1. first, to any increases in Face Amount or to the addition of any Rider for Additional Protection Benefit providing coverage on the life of the Insured, in the reverse order in which they were made;

2. second, to the Face Amount on the Date of Issue.

If both an increase in Face Amount and the addition of a Rider for Additional Protection Benefit providing coverage on the life of the Insured became effective on the same date, a decrease in total insurance coverage made effective on that date shall apply in the following order:

1. first, to any increase in total insurance coverage resulting from the addition of a Rider for Additional Protection Benefit providing coverage on the life of the Insured;

2. second, to any increase in Face Amount;

3. third, to the Face Amount on the Date of Issue.

If Death Benefit Option B is in effect on the date of the withdrawal:

1. the Accumulated Value shall be decreased by the amount withdrawn; and

2. there shall be no decrease in the Face Amount.

We may defer payment of any withdrawal for not more than six months. If we defer such payment for more than 30 days, we will pay interest from the date we receive such request to the date of payment at a rate not less than the Accumulated Value Interest Rate shown in the Data Section.

# POLICY LOANS

**Policy Loans.** We will loan an amount up to the Loan Value of the policy less the amount of any outstanding loan, at any time after the first Policy Year. At the time of the loan the policy must be in force. The policy shall be the sole security for the loan and must be duly assigned to us.

**Loan Value.** During the Premium Payment Period, the Loan Value on any day is equal to:

1. the Accumulated Value on such day; less

2. the Surrender Charge on such day; less

3. three times the Monthly Deduction for the next Monthly Policy Date.

**Loan Interest Rate.** Any loan shall bear interest from the date the loan is made. The Loan Interest Rate may change from Policy Year to Policy Year.

The Loan Interest Rate on the Date of Issue of the policy is stated in the Data Section. Such rate shall apply to any debt to us on this policy until the rate is changed by us. We may change the Loan Interest Rate only on a policy anniversary, after which the changed rate will apply to any new or existing debt to us on the policy. The Loan Interest Rate we set shall not exceed the Maximum Rate allowed. The Maximum Rate allowed is the greater of:

1. the Published Monthly Average for the calendar month ending two months before the calendar month in which the policy anniversary occurs; or

2. the yearly Accumulated Value Interest Rate shown in the Data Section plus 1%.

The Published Monthly Average shall be the Moody's Corporate Bond Yield Average-Monthly Average Corporates, as published by Moody's Investors Service, Inc., or any successor to it. If at any time that Published Monthly Average is no longer published, a substantially similar average, established under the law of the state where this policy was delivered, shall be used.

If on any policy anniversary the Maximum Rate then allowed is at least ½% per year less than the Loan Interest Rate in effect for this policy during the prior Policy Year, we will decrease the Loan Interest Rate for this policy. It will be decreased to a rate equal to or less than the Maximum Rate then allowed. If on any policy anniversary the Maximum Rate then allowed is at least ½% per year more than the Loan Interest Rate in effect on this policy during the prior Policy Year, we may increase such Loan Interest Rate. If increased, it shall be increased to a rate not greater than the Maximum Rate then allowed.

6557(0493)7

We will give to the Owner:

1. notice of the Loan Interest Rate in effect for this policy at the time a loan is made; and

2. at least 30 days advance notice of any increase in the Loan Interest Rate, if there is any debt to us on this policy.

In no event shall the Loan Interest Rate exceed the highest loan interest rate allowed by the law of the state in which this policy is delivered.

If there is a Policy Loan, any policy dividends may be adjusted. Such dividends may be altered based on the interest return the Company realized on any Policy Loan on this policy when compared to its return on other assets.

**General Loan Terms.** After the loan is made, loan interest shall be due on the next and all later policy anniversaries. If any interest is not paid when due, it shall be added to the loan and bear interest on the same terms.

The debt secured by this policy includes loans, unpaid loan interest and accrued loan interest not otherwise due.

All or any part of the debt may be paid to us at any time prior to:

1. the death of the Insured; and

2. surrender of the policy.

However, during a Grace Period the debt may not be repaid. Unless the Owner specifies, any payment to us shall be deemed a premium payment and not payment of the debt. At the death of the Insured or upon the surrender of the policy, all debt shall become due at once. It shall be paid from the policy values.

We may defer any policy loan, other than one to pay premiums on our policies, for not more than six months.

# DIVIDENDS

**Dividends.** We may credit this policy with shares, called dividends, from our divisible surplus. However, it is expected that no dividends will be credited to this policy. Any dividends shall be set by us and shall be credited on the policy anniversary. Any dividends credited shall be treated as net premiums and shall be added to the Accumulated Value on the policy anniversary, unless the Owner chooses to take them in cash.

# REPORTS

**Annual Report.** At least once each Policy Year we will send to the Owner a report.

The report will show, as of its date:

1. the Accumulated Value; and

2. the Cash Surrender Value; and

3. any debt to us on this policy; and

4. the Death Benefit.

The report will also show a summary of transactions of the previous year and any information required by law.

**Projection Report.** The Owner may request in writing a report which projects future values and future Death Benefits for this policy. The report will also show any information required by law. We may charge a fee for the report. The Projection Report will be based on:

1. data the Owner gives us as to Face Amount and premiums; and

2. such assumptions as either the Owner or we specify.

# PAYMENT OPTIONS

**General Payment Option Terms.** An option cannot be chosen after the proceeds have been paid.

If the proceeds to be placed under an option are less than $3,500, we may pay them in one sum to the payee who otherwise would receive the first payment under the option.

If any payments would be less than $50, we will change the frequency to provide payments of at least $50.

The Effective Date of any option is the date the proceeds become payable.

We may require proof to our satisfaction that any payee is alive on the date any payment is due.

If the proceeds are assigned on the Effective Date of an option, we will pay the assignee's share in one sum and place only the balance under the option. After the Effective Date neither the payments nor the remaining value may be assigned or encumbered. To the extent the law permits, they are not subject to any claims against the payee.

We may issue a document stating the terms of the option.

**Choice of Option.** Instead of payment in one sum, all or part of the proceeds may be placed under any Payment Option. Choice of an option may be made:

1. by the Owner if the Insured is living; or

2. by the Beneficiary if the Insured is not living and if no option is in effect.

Equivalent payments for 12-,6-,3-, or 1-month intervals may be chosen. The options are described in terms of monthly payments. We will quote the amount of the other payments on request.

**Change of Payment Option.** The right to change options may be included in the choice of Option 1, 2, or 4. At the time of change the remaining value under the old option shall become the proceeds to be placed under the new option.

**Withdrawals.** The right of withdrawal may be included in the choice of Option 1, 2 or 4.

1. Under Options 1 and 4 all or any part of the remaining value may be withdrawn at any time. Not more than four partial withdrawals may be made during any calendar year.

2. Under Option 2 the entire remaining value may be withdrawn at any time.

6557(0493)8

No withdrawals may be made under Option 3,5,6 or 7.

**Payment Options.** In addition to the following options, other Payment Options may be available.

**Option 1–Payments of Interest Only.** Interest at a rate of 3½% per year shall be paid either for the life of the payee or for a chosen period. We may pay more interest in any year. Upon the earlier of the death of the payee or the end of the chosen period, any remaining value will be paid. The first payment shall be made one month after the Effective Date. If the payee is not a human being, payments may not continue for more than 30 years.

**Option 2–Payments for a Stated Time.** Equal monthly payments shall be made for a stated number of years. The first payment shall be made on the Effective Date. The amount of each monthly payment is shown in the table. The monthly payments are based on an interest rate of 3½% per year. We may pay more interest in any year.

### Option 2 Table
**Monthly Payments for Each $1,000 of Proceeds**

| Stated No. of Years | Monthly Payments |
|---|---|
| 1 | $84.65 |
| 2 | 43.05 |
| 3 | 29.19 |
| 4 | 22.27 |
| 5 | 18.12 |
| 6 | 15.35 |
| 7 | 13.38 |
| 8 | 11.90 |
| 9 | 10.75 |
| 10 | 9.83 |
| 11 | 9.09 |
| 12 | 8.46 |
| 13 | 7.94 |
| 14 | 7.49 |
| 15 | 7.10 |
| 16 | 6.76 |
| 17 | 6.47 |
| 18 | 6.20 |
| 19 | 5.97 |
| 20 | 5.75 |
| 21 | 5.56 |
| 22 | 5.39 |
| 23 | 5.24 |
| 24 | 5.09 |
| 25 | 4.96 |
| 26 | 4.84 |
| 27 | 4.73 |
| 28 | 4.63 |
| 29 | 4.53 |
| 30 | 4.45 |

**Option 3 – Payments for Life.** Equal monthly payments shall be made for any guaranteed period chosen and thereafter during the life of a chosen human being. The first payment shall be made on the Effective Date. The amount of each monthly payment depends on the age and sex of the chosen human being on the Effective Date and on any guaranteed period chosen. We may require proof to our satisfaction of such age. We may require like proof that such human being is alive on the date any payment is due. The guaranteed period may be 5, 10, 15 or 20 years or a Refund period. A Refund period extends until the sum of the payments is equal to the proceeds placed under the option. The monthly payments are based on an interest rate of 3½% per year. We may pay more interest in any year during the guaranteed period. We will quote the amount of monthly payments for lower ages and guaranteed periods not shown in the Option 3 Table on request.

### Option 3 Table
**Monthly Payments for Each $1,000 of  Proceeds**

(Amounts shown are for the age nearest birthday on the Effective Date)

| | Guaranteed Period | | | | | |
|---|---|---|---|---|---|---|
| | Male | | | Female | | |
| Age | None | 10 Years | Refund | None | 10 Years | Refund |
| 50 | $4.44 | $4.40 | $4.29 | $4.10 | $4.09 | $4.03 |
| 51 | 4.52 | 4.47 | 4.35 | 4.16 | 4.14 | 4.08 |
| 52 | 4.59 | 4.54 | 4.42 | 4.22 | 4.20 | 4.13 |
| 53 | 4.67 | 4.62 | 4.48 | 4.29 | 4.26 | 4.19 |
| 54 | 4.76 | 4.70 | 4.55 | 4.35 | 4.33 | 4.24 |
| 55 | 4.85 | 4.78 | 4.62 | 4.42 | 4.39 | 4.30 |
| 56 | 4.94 | 4.86 | 4.70 | 4.50 | 4.47 | 4.37 |
| 57 | 5.04 | 4.96 | 4.78 | 4.58 | 4.54 | 4.44 |
| 58 | 5.15 | 5.05 | 4.86 | 4.66 | 4.62 | 4.51 |
| 59 | 5.26 | 5.15 | 4.95 | 4.75 | 4.70 | 4.58 |
| 60 | 5.38 | 5.26 | 5.04 | 4.85 | 4.79 | 4.66 |
| 61 | 5.51 | 5.37 | 5.14 | 4.95 | 4.89 | 4.74 |
| 62 | 5.65 | 5.49 | 5.24 | 5.06 | 4.99 | 4.83 |
| 63 | 5.80 | 5.62 | 5.35 | 5.17 | 5.09 | 4.92 |
| 64 | 5.96 | 5.75 | 5.47 | 5.30 | 5.20 | 5.02 |
| 65 | 6.13 | 5.88 | 5.59 | 5.43 | 5.32 | 5.12 |
| 66 | 6.31 | 6.03 | 5.71 | 5.57 | 5.44 | 5.23 |
| 67 | 6.51 | 6.17 | 5.84 | 5.72 | 5.57 | 5.34 |
| 68 | 6.72 | 6.33 | 5.98 | 5.88 | 5.71 | 5.47 |
| 69 | 6.94 | 6.48 | 6.13 | 6.05 | 5.85 | 5.60 |
| 70 | 7.18 | 6.65 | 6.28 | 6.24 | 6.01 | 5.73 |
| 71 | 7.43 | 6.81 | 6.45 | 6.44 | 6.17 | 5.87 |
| 72 | 7.70 | 6.98 | 6.61 | 6.66 | 6.34 | 6.03 |
| 73 | 7.99 | 7.15 | 6.79 | 6.90 | 6.51 | 6.19 |
| 74 | 8.29 | 7.33 | 6.99 | 7.16 | 6.69 | 6.37 |
| 75 | 8.62 | 7.50 | 7.17 | 7.44 | 6.88 | 6.55 |
| 76 | 8.98 | 7.67 | 7.38 | 7.74 | 7.07 | 6.74 |
| 77 | 9.35 | 7.85 | 7.61 | 8.06 | 7.27 | 6.95 |
| 78 | 9.76 | 8.02 | 7.84 | 8.41 | 7.46 | 7.16 |
| 79 | 10.19 | 8.18 | 8.08 | 8.79 | 7.66 | 7.39 |
| 80 | 10.66 | 8.34 | 8.35 | 9.20 | 7.86 | 7.65 |
| 81 | 11.15 | 8.50 | 8.59 | 9.65 | 8.05 | 7.90 |
| 82 | 11.68 | 8.65 | 8.88 | 10.13 | 8.24 | 8.16 |
| 83 | 12.24 | 8.79 | 9.19 | 10.65 | 8.42 | 8.45 |
| 84 | 12.83 | 8.91 | 9.47 | 11.21 | 8.59 | 8.74 |
| 85+ | 13.46 | 9.04 | 9.81 | 11.82 | 8.74 | 9.09 |

+ Higher ages the same

**Option 4 - Payments of a Stated Amount.** Equal monthly payments of a stated amount shall be made until the proceeds, with interest at 3½% per year on the unpaid balance, are used up. The first payment shall be made on the Effective Date. The amount chosen must be at least $10 per month for each $1,000 of proceeds placed under this option. We may add more interest to the unpaid balance in any year, which will extend the number of payments. The last payment will be for the balance only.

**Option 5 - Life Annuity.** Equal monthly payments shall be made in the same manner as Option 3 except:

1. the amount of each payment shall be based on our current settlement rates on the Effective Date; and

2. no additional interest shall be paid.

**Option 6 - Joint and Two-Thirds Annuity.** Equal monthly payments shall be made while two chosen human beings are both living. Upon the death of either, two-thirds of the amount of such payments shall continue during the life of the survivor. The first payment shall be made on the Effective Date. The amount of each monthly payment depends on the ages and sexes of the chosen human beings on the Effective Date. We may require proof to our satisfaction of their ages. We may require like proof that any chosen human being is alive on the date any payment conditioned on the life of such human being is due. The initial amount of each monthly payment is shown in the table. We will quote the amount of monthly payments for any other age combination on request. The monthly payments are based on an interest rate of 3½% per year. No additional interest shall be paid.

### Option 6 Table
**Monthly Payments for Each $1,000 of Proceeds**
(Amounts shown are for the age nearest birthday on the Effective Date)

| Ages of Both | One Male and One Female | Ages of Both | One Male and One Female |
|---|---|---|---|
| 50 | $4.11 | 68 | $5.86 |
| 51 | 4.17 | 69 | 6.03 |
| 52 | 4.23 | 70 | 6.21 |
| 53 | 4.29 | 71 | 6.41 |
| 54 | 4.35 | 72 | 6.62 |
| 55 | 4.42 | 73 | 6.84 |
| 56 | 4.50 | 74 | 7.08 |
| 57 | 4.58 | 75 | 7.35 |
| 58 | 4.66 | 76 | 7.63 |
| 59 | 4.75 | 77 | 7.93 |
| 60 | 4.84 | 78 | 8.25 |
| 61 | 4.94 | 79 | 8.60 |
| 62 | 5.05 | 80 | 8.97 |
| 63 | 5.16 | 81 | 9.38 |
| 64 | 5.29 | 82 | 9.81 |
| 65 | 5.42 | 83 | 10.27 |
| 66 | 5.55 | 84 | 10.77 |
| 67 | 5.70 | 85+ | 11.31 |

+ Higher ages the same

**Option 7 - 50% Survivor Annuity.** Equal monthly payments shall be made during the life of the chosen primary human being. Upon the death of the chosen primary human being, 50% of the amount of such payments shall continue during the life of the chosen secondary human being. The first payment shall be made on the Effective Date. The amount of each monthly payment depends on the ages and sexes of the chosen human beings on the Effective Date. We may require proof to our satisfaction of their ages. We may require like proof that any chosen human being is alive on the date any payment conditioned on the life of such human being is due. The initial amount of each monthly payment is shown in the table. We will quote the amount of monthly payments for any other age combination on request. The monthly payments are based on an interest rate of 3½% per year. No additional interest shall be paid.

### Option 7 Table
**Monthly Payments for Each $1,000 of Proceeds**
(Amounts shown are for the age nearest birthday on the Effective Date)

| Ages of Both | Male Primary Female Secondary | Female Primary Male Secondary | Ages of Both | Male Primary Female Secondary | Female Primary Male Secondary |
|---|---|---|---|---|---|
| 50 | $4.11 | $3.96 | 68 | $5.85 | $5.51 |
| 51 | 4.17 | 4.01 | 69 | 6.02 | 5.66 |
| 52 | 4.23 | 4.06 | 70 | 6.20 | 5.82 |
| 53 | 4.29 | 4.12 | 71 | 6.39 | 6.00 |
| 54 | 4.35 | 4.18 | 72 | 6.59 | 6.18 |
| 55 | 4.42 | 4.24 | 73 | 6.81 | 6.39 |
| 56 | 4.50 | 4.31 | 74 | 7.05 | 6.60 |
| 57 | 4.58 | 4.38 | 75 | 7.30 | 6.84 |
| 58 | 4.66 | 4.45 | 76 | 7.57 | 7.09 |
| 59 | 4.75 | 4.53 | 77 | 7.86 | 7.36 |
| 60 | 4.84 | 4.61 | 78 | 8.17 | 7.66 |
| 61 | 4.94 | 4.70 | 79 | 8.51 | 7.97 |
| 62 | 5.05 | 4.79 | 80 | 8.86 | 8.32 |
| 63 | 5.16 | 4.89 | 81 | 9.25 | 8.68 |
| 64 | 5.28 | 5.00 | 82 | 9.66 | 9.08 |
| 65 | 5.41 | 5.12 | 83 | 10.10 | 9.51 |
| 66 | 5.55 | 5.24 | 84 | 10.56 | 9.97 |
| 67 | 5.69 | 5.37 | 85+ | 11.06 | 10.47 |

+ Higher ages the same

6557(0493)10

ℵ: National Life Insurance Company
Montpelier, Vermont 05604

# REQUEST FOR AMENDMENT OF APPLICATION

022UBB

Date  FEBRUARY 19, 1997

I amend my application, on which you are issuing contract No. __NL2285635__ , so that the answers to the questions below will read as shown.   I agree that: (1) this amendment shall become a part of said application; and (2) said application shall be considered as a part of the contract:

5315AZ (0493) A

11.  Plan: NAVITRAK

12.  Amount:      $395,150

17.a.  Use of Dividend:  Cash

22.a.  NIL.

23.c.  Premium Interval/Planned Periodic Premium:
Annual/Planned Periodic Premium       $19,078.25

31.a.  Has there been or will there be a lapse, surrender, replacement, reissue, or change to reduce amount, premium or period of coverage of any existing life, disability or annuity contract if the applied for policy or rider is issued? YES, SUN LIFE - POLICY #020015709

1436MA (0792) B

Part B  13.  Have you consulted any physicians or other medical professionals other than your personal physician within the past 5 years?  YES.

Part B  15.  To the best of your knowledge, has any member of your family had diabetes, heart disease or polycystic kidney disease?  NO.

APPLICANT  CYNTHIA BROWN

DATE SIGNED

1465-81L

# Life Insurance
**Application**

**To: National Life Insurance Company**
Montpelier, Vermont 05604
(802) 229-3333

| Application Number | Agency Name and Number | Policy Number |
|---|---|---|
| — 142253 | Boston 022 | NL 2285635 |

**Part A** *Questions 1-10, 24-32 refer to Proposed Insured.*

**1.** Full name of Proposed Insured: *Print first, middle and last name.*
Cynthia Brown

**2.** Social Security Number: 2330

**3.** Birthdate: *Mo./Day/Yr.* 50

**4.** Birthplace: Montclair N.J.

**5.** Sex: ☐ Male   ☑ Female

**6.** Issue policy at age: 46

**7.** Residence address: *Give street and number, city or town, state and zip code.*
Branford. Ct. 06409

**8.a.** Employer: Self Employed
**b.** Kind of business: Human Service
**c.** Business address:

**d.** How long employed by present employer? 13

**9.a.** Occupation: Director
**b.** Specific duties: Management

**c.** How long in present occupation? 13

**d.** Any change contemplated?
*If "Yes," explain in Remarks.*   ☐ Yes ☑ No

**10.** Does the Proposed Insured now smoke cigarettes or has the Proposed Insured smoked any cigarettes within the last 12 months?   ☐ Yes ☑ No

**11.** Plan: *Complete Question 22 for Interest Sensitive Whole Life. Complete Question 23 for Flexible Premium Adjustable Benefit Life.*
~~AMENDED~~ Universal Life

**12.** Amount:
~~AMENDED~~ 200,000

5315AZ(0493)A

**13.** Additional Benefits:
- ☐ Waiver of Premiums
- ☐ Accidental Death Benefit   $_____
- ☐ YRT Rider   $_____
- ☐ Additional Insurance Option   $_____
- ☐ Children Protection Benefit *Complete Form 1455.*
- ☐ Family Protection Benefit *Complete Form 1440.*
- ☐ Cost of Living Rider   Units _____
- ☐ Additional Paid-Up Life Annual Prem. $_____
-    Single Prem. $_____
- ☐ Beneficiary Insurance Option *Complete Form 1445.*
- ☐ _____
- ☐ _____
- ☐ _____

**14.** Life insurance policy loan interest rate:
☐ Variable - Limit on loan interest rate, if any: ____ %

**15. a.** Premium Interval:
- ☑ Annual   12 Months
- ☐ Semiannual   6 Months
- ☐ Quarterly   3 Months
- ☐ Monthly   1 Month
- ☐ COM   1 Month

**b.** Special Billing Type:
- ☐ Group # _____
- ☐ Gov't. Allotment
- ☐ Payroll Deduction
- _____

**16.** Automatic payment of premium is: ☐ requested.
☐ not requested.

**17. a.** Use of Dividend: ~~AMENDED~~
- ☐ Cash
- ☐ Applied *n/a* COM
- ☐ Dividend Additions
- ☐ Dividends Held
- ☐ Deferred Additions
- ☐ Dividend Term Option
  balance to:

**b.** Dividend Protection Riders: *Limited Availability*
- ☐ One Yr. Term + Adds = $ _____
- ☐ One Yr. Term = $ _____   , + Adds

**18.** Send premium notices to:
- ☑ Residence   ☐ Business   ☐ Owner's
  Address *No. 7*   Address *No. 8c*   Address *No.20*
- ☐ Other *Give name & address.*

Cat. No. 42575

Application Number: ▬ 142?

**19.** Owner: *If Owner is a minor, complete Limitations of Ownership form.*

☑ **Insured**

☐ Other *Individual* _____

_____
*Name and relationship*

_____, while living,

thereafter _____,

contingent owner, while living, and thereafter

*Check one*  ☐ executors or administrators of last survivor of the named owners

☐ Insured

☐ **Corporation:** _____

_____
*Full legal name of corporation*

incorporated in _____, its successors or assigns.
*State*

☐ **Partnership:** _____

_____
*Name of partnership*

a partnership of _____, _____
*City*          *State*

or any successor partnership doing business in said city under said name.

☐ **Trust:** _____

_____
*Name of trustee(s)*

trustee(s) under an instrument of trust between

_____ and said trustee(s),
*Name of trustor*

named _____, and
*Name of trust*

dated _____, as heretofore or hereafter
*Date of trust*

amended, or the successor(s) in said trust or assigns.

☐ **As per supplemental request.**

**20.** Owner's address:

Owner's Social Security
or Taxpayer Number:

**21.** Beneficiary: *Give full names, addresses, dates of birth and relationships to Insured.*

The right to change the beneficiary is reserved.

First   *Kirk Brown (Brother)*

Second   *Christina Brown (Sister)*

Payment will be shared equally by all First beneficiaries who survive Insured; if none, by all Second beneficiaries who so survive; if none, payment will be made to Owner or executors or administrators of the Owner's estate.

☐ **As per supplemental request.**

---

**22.** *The following questions must be answered when applying for Interest Sensitive Whole Life:*

**a.** Death Benefit Option *(choose one)* :

☐ Level

☑ Increasing   **AMENDED**

☐ Level for _____ years; increasing thereafter.

**b.** Selected Annual Premium $

**c.** Additional Benefit

☐ Cash Plus Option $

**23.** *The following questions must be answered when applying for Flexible Premium Adjustable Benefit Life Insurance:*

**a.** Death Benefit Option: *(choose one)*

☐ Option A. Face Amount

☑ Option B. Face Amount, plus Accumulated Value

**b.** Initial Premium $

**c.** Premium Interval/Planned Periodic Premium   **AMENDED**

*Notices will be sent for premiums the Owner plans to pay.*

☐ Annual/Planned Periodic Premium   $ *4000.00*

☐ Semiannual/Planned Periodic Premium   $

☐ Quarterly/Planned Periodic Premium   $

☐ Monthly/Planned Periodic Premium   $

☐ COM/Planned Periodic Premium   $

**d.** Special Billing Type:

☐ Group   ☐ Gov't. Allotment   ☐ Payroll Deduction

**24.** Have you ever applied for life insurance or reinstatement of life insurance which was declined, postponed or modified in any way?
*If "Yes," give details in Remarks.*

**25.** Are other negotiations for life of disability insurance pending?
*If "Yes," list companies, amounts, and total amount to be purchased in Remarks.*   ☐ Yes   ☑ No

**26.** Have you within the last three years participated in or do you intend to participate in, any motor powered racing, scuba, skin or sky diving, hang gliding, or any other avocation generally considered hazardous?
*If "Yes," complete Avocation Questionnaire.*   ☐ Yes   ☑ No

**27.** Do you intend to travel or reside outside the USA?
*If "Yes," complete Foreign Travel Questionnaire.*   ☐ Yes   ☑ No

**28.** Are you or do you have any intention of becoming a member of a military organization?
*If "Yes," give details in Remarks.*   ☐ Yes   ☑ No

**29.** Have you within the last three years been or do you have any intention of becoming a pilot, student pilot or crew member of any type of aircraft?
*If "Yes," complete Aviation Questionnaire.*   ☐ Yes   ☑ No

**30.** Have you had any moving vehicle violations or had your motor vehicle driving license suspended or revoked during the last two years?
*If "Yes," give details in Remarks.*   ☐ Yes   ☑ No

**31.** *If either a or b is answered "Yes," complete below:*   **AMENDED**

Name of Company _____

Policy Number _____

*The agent will provide you with any replacement forms required by state law.*

**a.** Has there been or will there be a lapse, surrender, replacement, reissue, or change to reduce amount, premium or period of coverage of any existing life, disability or annuity contract if the applied for policy or rider is issued?   ☑ Yes   ☐ No

**b.** Will there by any substantial borrowing on any life insurance policy if the applied for policy or rider is issued?   ☐ Yes   ☑ No

**32.** Life Insurance In Force: *Include personal, group, and business insurance (please specify). If "None," so state.*

| Company | Total Amount Life Insurance $ | Total with Waiver of Premiums $ | Total Accidental Death Benefit $ | Date of Issue | Paid to Date |
|---|---|---|---|---|---|
| Sun Life of Canada | 200,000 | | | 3-4-96 | |

**33.** Remarks

---

## Agreement - Please Read & Sign

**1.** The statements and answers on Part A of this application are, to the best knowledge and belief of the Proposed Insured, complete and true. They, together with the statements and answers on Part B of this application, shall be a part of the contract of insurance if one is issued. The Applicant, if someone other than the Proposed Insured, agrees to be bound by all statements and answers signed by the Proposed Insured in Parts A and B of this application.

**2.** The Company may make administrative corrections and changes to this application. These, if any, are noted on the "Application Amendment" page which is attached to the policy at issue. Acceptance of any policy issued on this application will ratify and will be notice of any such change made. If the laws where the application is made so require, any change of amount, age at issue, class of risk, plan of insurance or benefits must be ratified in writing.

**3.** The agent taking this application has no authority to make, change or discharge any contract hereby applied for. The agent may not extend credit on behalf of the Company. No statement made to or information acquired by any representative of the Company shall bind the Company unless set out in writing in Parts A or B of this application.

**4.** The Company shall incur no liability under any policy issued on this application unless and until:
   a. such policy is delivered to the Owner, and
   b. the first premium is paid prior to any change in the Proposed Insured's good health and insurability.

Any Receipt issued which bears the same number as this application may provide otherwise.

**I have paid $_____ for Life Insurance with this Application. I have received the Receipt And Life Insurance Agreement. I have read it. I understand it.**

## Authorization

I authorize any physician, medical practitioner, hospital, clinic or other medically related facility, insurer or reinsurer, the Medical Information Bureau, Inc., consumer reporting agency, or employer having information as to diagnosis, treatment and prognosis of any physical or mental condition of me or any of my minor children on whose life I have applied for insurance and any non-medical information of me or such minor children to give to National Life Insurance Company, herein called National Life, or its authorized representative, any and all such information. This information may be used to determine eligibility for life or health insurance or claims for benefits, and I authorize National Life to release any of this information to the Medical Information Bureau, Inc., to reinsurers, and to other life insurance companies in which I have insurance or seek insurance or benefits from. I authorize National Life to redisclose the information to any person performing a business or legal function for its benefit, to an attending physician for diagnostic or treatment purposes, to government authorities to prevent insurance related illegal activities, to persons conducting medical or statistical studies for National Life, to persons having an authorization specifically permitting the redisclosure, and when required by law. This authorization shall remain valid for 30 months from the date shown below. I authorize National Life Insurance Company to obtain an investigative consumer report. I understand that I am entitled to be interviewed by the consumer reporting agency that prepares any such report, as long as I can reasonably be contacted during normal business hours.

☐ I wish to be interviewed if any investigative consumer report is prepared.

I understand I have a right to receive a copy of this authorization. I acknowledge receipt of copies of the pre-notifications relating to investigative consumer reports and the Medical Information Bureau, Inc. A copy of this authorization shall be as valid as the original.

Signed at _Hingham, Ma._ on the _27_ day of _December_ 19_96_

City & State

_____  Proposed
Print name of Proposed Insured  Insured: _____
                                 If other than the Applicant - Sign name in full

Soliciting Agent: _____  Applicant: x Rev. Cynthia Brown
                 Sign name in full                Sign name in full

**Part B   To:** ☒ National Life Insurance Company   ☐ Vermont Life Insurance Company, Montpelier, Vermont 05604

**1.a.** Full name of Proposed Insured: _Cynthia — Brown_   **b.** Date of Birth: _o_   **c.** Place of Birth: _NJ_

**2.a.** Name of Personal physician: *If none, so state.* _Dr Richard Kauffman_   **b.** Address: _960 main ST Branford, Co Nov 1996_   **c.** Date last consulted: _Nov 1996_

**d.** Reason and outcome: _routine physical_

**3.a.** Height in shoes: _5_ ft. _5_ in.   **b.** Weight in clothes: _170_ lbs.

**c.** Change in weight in past year: Gain _0_ lbs. — Loss _ _ lbs.   **d.** Reason:

| | **Answer "Yes" or "No"** |
|---|---|
| *Check marks and "Y" or "N" are not acceptable. If any question is answered "Yes," give dates and details. Include name and address of physician consulted.* | |

**4.a.** To the best of your knowledge, is your health impaired in any way? — No
**b.** Are you taking any medications currently? If so, what and why? — No
**c.** To the best of your knowledge, are you pregnant? — No
**d.** Have you ever applied for or received disability compensation from any source? — No

**5.a.** Within the past 10 years have you been advised by a physician, practitioner, or other health care provider to reduce alcohol intake or have you attended meetings of an alcohol self-help group or Alcoholics Anonymous? — No
**b.** Except as prescribed by a physician, have you ever used narcotic drugs, amphetamines, cocaine, barbiturates, tranquilizers, hallucinogens, or marijuana? — No
**c.** Do you use tobacco in any form? — No

**6.** To the best of your knowledge, within the past 10 years, have you had:
**a.** Chest pain, heart murmur, rheumatic fever or anemia? — No
**b.** Habitual cough, asthma, emphysema or pleurisy? — No
**c.** Ulcer, jaundice, or chronic indigestion? — No
**d.** Stroke, dizzy spells, epilepsy, convulsions, paralysis or unconsciousness? — No

**7.** To the best of your knowledge, within the past 10 years, have you received professional treatment or advice for disease or disorder of:
**a.** Heart, veins, arteries, blood or blood pressure? — No
**b.** Lungs or respiratory tract? — No
**c.** Esophagus, stomach, intestines, rectum, liver or gall bladder? — No
**d.** Kidney, bladder, prostate, genito-urinary organs, pelvic organs or breast? — No
**e.** Eyes, ears, nose or throat? — No
**f.** Brain, nervous system or headaches? — No
**g.** Spine, bones, muscles, joints, skin or glands? — No

*Susan Richmond Madison, CT ob gyn exam (wnc) 1997 Jan*

**8.** To the best of your knowledge, within the past 10 years, have you been advised by a physician, practitioner or other health care provider that you had:
**a.** Cancer or other tumor? — No
**b.** Gout, arthritis, rheumatism or back pain? — No
**c.** High blood sugar or diabetes? — No
**d.** Albumin, sugar, casts, pus or blood in the urine? — No
**e.** Renal colic or kidney stone? — No
**f.** Anxiety, depression, neurosis, psychosis, or psychological problem or condition? — No

**9.** Within the past 10 years have you had, or has a physician, practitioner or other health care provider diagnosed you as having or treated you for Acquired Immune Deficiency Syndrome (AIDS), "AIDS" Related Complex (ARC), or "AIDS" related conditions? — No

**10.** Have you had x-rays or electrocardiograms made within the past 5 years? If so, where? — No

**11.** Have you within the past 5 years been in or do you plan to enter or have you been advised to enter a hospital for observation, operation or treatment? — No

**12.** Do you have pending, or do you intend to make within the next 30 days, an appointment with any physician or practitioner? Why? — No

**13.** Have you consulted any physicians or practitioners other than your personal physician within the past 5 years? — Yes

**14.** Family History:

| | Age if alive | State of health | Age at death | Cause of death |
|---|---|---|---|---|
| Father | | | 63 | MVB |
| Mother | | | 63 | lung ca |
| Sisters and Brothers Alive _2_ | 43 | Good | | |
| Dead _0_ | 40 | Good | | |

**15.** To the best of your knowledge, has any member of your family had diabetes, heart disease or polycystic kidney disease?
☐ Yes   ☒ No

I have read the answers to the foregoing questions. They are correctly recorded and they are complete and true to the best of my knowledge and belief. They shall be used by the Company in any action it takes.

_Vida Levy   Emt6_ _____ Witness

_Rev. Cynthia Brown_ _____ Signature of Proposed Insured

_4-22-97_ _____ Date

14368-90

**Part B To:** ☐ National Life Insurance Company  ☐ Vermont Life Ins. Co., Montpelier, VT  05604 • (802) 229-3333 **No.**

**1.a.** Full name of Proposed Insured: *Cynthia Brown*  **b.** Date of birth: *50*  **c.** Place of birth: *Montclair N.J.*

**2.a.** Name of personal physician: *(If none, so state)*  **b.** Address: *Dr. R. Kaufman Main St. BFD*  **c.** Date last consulted:

**d.** Reason and outcome: *Phys. exam  outcome  fine*

| | **Answer "Yes" or "No"** | *Check marks and "Y" or "N" are not acceptable. If any question is answered "Yes," give dates and details. Include name and address of physician consulted.* |
|---|---|---|
| **3.a.** Height in shoes: *5* ft. *7* in. ☒  **b.** Weight in clothes: *185* lbs. | | |
| **c.** Change in weight in past year: Gain ___ lbs.- Loss ___ lbs.  *No*  **d.** Reason: | | |
| **4.a.** To the best of your knowledge, is your health impaired in any way? | *No* | |
| **b.** Are you taking any medications currently?  If so, what and why? | *No* | |
| **c.** To the best of your knowledge, are you pregnant? | *No* | |
| **d.** Have you ever applied for or received disability compensation from any source? | *No* | |
| **5.a.** Within the past 10 years have you been advised by a physician, practitioner, or other health care provider to reduce alcohol intake or have you attended meetings of an alcohol self-help group or Alcoholics Anonymous? | *No* | |
| **b.** Except as prescribed by a physician, have you ever used narcotic drugs, amphetamines, cocaine, barbiturates, tranquilizers, hallucinogens, or marijuana? | *No* | |
| **c.** Do you use tobacco in any form? | *No* | |
| **6.** To the best of your knowledge, within the past 10 years, have you had: | | |
| **a.** Chest pain, heart murmur, rheumatic fever or anemia? | *No* | |
| **b.** Habitual cough, asthma, emphysema or pleurisy? | *No* | |
| **c.** Ulcer, jaundice, or chronic indigestion? | *No* | |
| **d.** Stroke, dizzy spells, epilepsy, convulsions, paralysis or unconsciousness? | *No* | |
| **7.** To the best of your knowledge, within the past 10 years, have you received professional treatment or advice for disease or disorder of: | | |
| **a.** Heart, veins, arteries, blood or blood pressure? | *No* | |
| **b.** Lungs or respiratory tract? | *No* | |
| **c.** Esophagus, stomach, intestines, rectum, liver or gall bladder? | *No* | |
| **d.** Kidney, bladder, prostate, genito-urinary organs, pelvic organs or breast? | *No* | |
| **e.** Eyes, ears, nose or throat? | *No* | |
| **f.** Brain, nervous system or headaches? | *No* | |
| **g.** Spine, bones, muscles, joints, skin or glands? | *No* | |
| **8.** To the best of your knowledge, within the past 10 years, have you been advised by a physician or other medical professional that you had: | | |
| **a.** Cancer or other tumor? | *No* | |
| **b.** Gout, arthritis, rheumatism or back pain? | *No* | |
| **c.** High blood sugar or diabetes? | *No* | |
| **d.** Albumin, sugar, casts, pus or blood in the urine? | *No* | |
| **e.** Renal colic or kidney stone? | *No* | |
| **f.** Anxiety, depression, neurosis, psychosis, or psychological problem or condition? | *No* | |
| **9.** Within the past 10 years have you had, or has a physician or other medical professional diagnosed you as having or treated you for Acquired Immune Deficiency Syndrome (AIDS) or "AIDS" Related Complex (ARC)? | *No* | |
| **10.** Have you had x-rays or electrocardiograms made within the past 5 years?  If so, where? | *No* | |
| **11.** Have you within the past 5 years been in or do you plan to enter or have you been advised to enter a hospital for observation, operation or treatment? | *No* | |
| **12.** Do you have pending, or do you intend to make within the next 30 days, an appointment with any physician or practitioner?  Why? | *No* | |
| **13.** Have you consulted any physicians or other medical professionals other than your personal physician within the past 5 years? | **AMENDED** | |

| **14.** Family history | Age if alive | State of health | Age at death | Cause of death | **15.** To the best of your knowledge, has any member of your family had diabetes, heart disease or polycystic kidney disease? |
|---|---|---|---|---|---|
| Father | | | 62 | Car Accident | |
| Mother | | | 61 | Lung Cancer | ☐ Yes  ☐ No  **AMENDED** |
| Sisters and Brothers: Alive | 43 | Excellent | | | |
| Dead | 40 | Excellent | | | |

I have read the answers to the foregoing questions. They are correctly recorded and they are complete and true to the best of my knowledge and belief. They shall be used by the Company in any action it takes.

_____  *Witness*  ✗ *Rev. Cynthia Brown*  *12-27-96*
*Signature of Proposed Insured*  *Date*

1436MA(0792)B  Cat. No. 40187